UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-14392-Cannon/McCabe

DAVID CHRISTOPHER HAMILTON,

       Petitioner,

v.

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court upon David Christopher Hamilton's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") (DE 1), which was referred to the undersigned by United States District Judge Aileen M. Cannon (DE 5). For the reasons set forth below, the undersigned **RECOMMENDS** that the Petition be **DENIED**.

## I. BACKGROUND

On March 25, 2015, the State Attorney for the Tenth Judicial Circuit in and for Highlands County, Florida charged Petitioner with (1) burglary of a dwelling while armed with a firearm in violation of Fla. Stat. §§ 810.02 and 775.087, and (2) grand theft in violation of Fla. Stat. § 812.014 (DE 9-1 at 9-11, Ex. B). The case proceeded to trial on June 13, 2016 (DE 10-3, DE 10-4).

### A. Trial Evidence

At trial, an eyewitness neighbor (hereafter "Eyewitness") testified that, on the afternoon of January 27, 2015, he saw a man and a woman break into his neighbor's house located in Lake Placid, Florida (DE 10-3 at 52-55, 66). The Eyewitness saw the man help the woman climb

through a garage window, after which the woman opened the garage door and the two entered the house (DE 10-3 at 54, 66).  After a few minutes, the Eyewitness saw the pair exit the house, with the man carrying an object that appeared to be a power tool "the size of a drill" (DE 10-3 at 55, 67).  The man placed the item into a basket affixed to a bicycle leaning against the house (DE 10-3 at 55, 65, 69).  The Eyewitness then saw the man and woman leave the house together, each riding a bicycle, one "light or cream colored" with a basket, and the other with a "darker frame" (DE 10-3 at 53-55).

A few minutes after the two left, the Eyewitness called 911 (DE 10-3 at 56).  A Highland County Deputy Sheriff (hereafter "Responding Deputy") thereafter responded to the scene at 2:14 PM and spoke to the Eyewitness (DE 10-3 at 38).  The Responding Deputy then contacted one of the two residents of the home (hereafter "Resident 1") and provided a description of the two suspects, as relayed by the Eyewitness (DE 10-3 at 39, 88).  Resident 1 immediately said she knew "who it was" and gave Petitioner's name to the Responding Deputy, as well as the name of Petitioner's girlfriend (hereafter "Girlfriend").   Resident 1 explained that Petitioner and his Girlfriend were currently living as tenants in a trailer owned by Resident 1's parents and that Resident 1 had hired the Girlfriend to clean her house three or four days earlier (DE 10-3 at 89). As to the light or cream-colored bicycle with a basket, Resident 1 told the Responding Deputy that she knew of a bicycle fitting that description near her parents' trailer, where Petitioner and his Girlfriend were living (DE 10-3 at 145).

The Responding Deputy then pulled up a small photograph of Petitioner on the computer screen in his squad car (DE 10-3 at 40-41).  The Responding Deputy showed the computer screen to the Eyewitness, who responded, "Look, I think it's him, but the guy appeared to have a skinnier face" (DE 10-3 at 57).

Thereafter, the Highland County Sheriff's Office initiated an investigation, during which an investigator (hereafter "Investigating Deputy") visited the area where Petitioner and his Girlfriend reportedly lived (DE 10-3 at 149, 154).  A few houses down from Petitioner's trailer, the Investigating Deputy found a cream-colored bicycle with a basket that matched the description provided by the Eyewitness (DE 10-3 at 149-51).  The Investigating Deputy found the owner of the bicycle, who reported that he had loaned it to the Girlfriend "prior to this incident" (DE 10-3 at 149, 151).  At another nearby house, the Investigating Deputy found a black ten-speed bicycle that matched the description of the second bicycle provided by the Eyewitness (DE 10-3 at 153-54).  The Investigating Deputy found the owner of this second bicycle and learned that the owner had loaned it to Petitioner (DE 10-3 at 153-154).

Thereafter, on February 5, 2015, another Deputy returned to the Eyewitness with a photo line-up of six males, one of whom was Petitioner (DE 10-3 at 78, 82, 115).  The line-up photos appeared larger because the Eyewitness could hold the photo closer for inspection as compared to the photo previously displayed on the squad car's computer screen, which had been arm's distance away (DE 10-3 at 40, 61).  This time, the Eyewitness positively identified Petitioner as the man who had committed the burglary (DE 10-3 at 58, 115).

**B.     Verdict and Sentence**

After a three-day jury trial, on June 15, 2016, the jury found Petitioner guilty as charged on all counts (DE 10-4 at 277-78).  The trial court adjudicated Petitioner guilty and eventually sentenced him to twenty years' imprisonment, as well as five years' probation (DE 9-1 at 17-20; DE 10-5 at 60-61).

### C.      Direct Appeal

On August 29, 2016, Petitioner appealed his conviction to Florida's Second District Court of Appeal ("Second DCA"), raising three claims:  (1) Petitioner's trial counsel (hereafter "Trial Counsel") rendered ineffective assistance by failing to move to suppress the computer screen, show-up identification made by the Responding Deputy and by failing to object to certain hearsay evidence; (2) the trial court erred by admitting evidence that one of Petitioner's associates had a reputation for dealing in stolen goods; and (3) the trial court erred by telling the jury they could leave their notepads in the courtroom during a break because "no cleaning people will come in," after the jury heard testimony that a "cleaning person" had committed the offense at issue (DE 9-1 29-31, Ex. D at 44).  The Second DCA affirmed Petitioner's conviction and sentence on December 6, 2017.  *See Hamilton v. State*, 241 So. 3d 104 (Fla. 2d DCA 2017).  The mandate issued on March 5, 2018 (DE 9-1 at 136).

### D.      Postconviction Motion

Thereafter, on January 19, 2019, Petitioner filed a postconviction motion pursuant to Fla. R. Crim. P. 3.850 (DE 9-1 at 139-78).  Petitioner argued that his Trial Counsel rendered ineffective assistance in four respects:  (1) by failing to move to suppress the Responding Deputy's computer screen show-up identification (DE 9-1 at 154-60); (2) by failing to object to certain hearsay testimony (DE 9-1 at 160-64); (3) by failing to call two alibi witnesses at trial (DE 9-1 at 164-68); and (4) by giving Petitioner improper advice as to his likelihood of success on the armed burglary charge and his resulting sentencing exposure, which caused Petitioner to reject multiple favorable plea offers (DE 9-1 at 168-71).

On January 27, 2020, the postconviction trial court denied claims (1) - (3) by written order without an evidentiary hearing (DE 9-1 at 703-06). The court reserved ruling on claim (4), finding that an evidentiary hearing would be necessary to resolve that claim (DE 9-1 at 705, 1473).

### E.    Amended Postconviction Motion

Before the state court scheduled a hearing to resolve claim (4), Petitioner filed an amended postconviction motion, re-stating the same four claims, but asserting newly discovered evidence in the form of five witness statements (DE 9-1 at 747, 1199-1228, 1230-72, 1274-1323, 1325-72, 1374-99, 1401-69). On August 24, 2020, the state court issued a written decision that rejected claims (1) – (3) as "previously denied" (DE 9-1 at 1471-73). As to the newly discovered evidence, the court found it "untimely as well as successive" pursuant to Fla. R. Crim. P. 3.850(b)(1), which prohibits postconviction motions filed more than two years after the judgment and sentence became final unless the motion alleges that "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence...." (DE 9-1 at 1472). The trial court found Petitioner could not meet this standard (DE 9-1 at 1472).

As to claim (4), the trial court moved forward with an evidentiary hearing on June 25, 2021, during which Petitioner and Trial Counsel both testified (DE 10-6). After hearing the evidence, the court denied claim (4), finding Trial Counsel's testimony credible that he never guaranteed success on the armed burglary charge and that he properly advised Petitioner as to his sentencing exposure (DE 9-1 at 1483). The court found Petitioner's testimony incredible that Trial Counsel guaranteed success on the armed burglary charge and that none of the lawyers or trial judges assigned to his case had ever alerted him to the mandatory ten-year prison term he faced if convicted on the armed burglary charge (DE 9-1 at 1481-82). Having made these factual

determinations, the court denied claim (4), thus resolving the last of the four claims raised in Petitioner's Rule 3.850 motion.

### F.    Appeal of Postconviction Proceedings

On August 11, 2021, Petitioner appealed the denial of his Rule 3.850 motion to the Second DCA, raising three issues: (1) the trial court erred by misapplying the *Strickland* test for ineffective assistance of counsel and by making findings of fact unsupported by competent substantial evidence (DE 9-1 at 1522-33); (2) the trial court erred by refusing to hold an evidentiary hearing as to claims (1) - (3) (DE 9-1 at 1534-41); and (3) the trial court erred by deeming Petitioner's newly discovered evidence as untimely under Fla. R. Crim. P. 3.850(b) (DE 9-1 at 1541-43).  On September 2, 2022, the Second DCA affirmed the trial court's decision in *Hamilton v. State*, 346 So. 3d 615 (Fla. 2d DCA 2022) and issued its mandate on October 3, 2022 (DE 9-1 at 1604).

This habeas Petition followed.

## II.    STANDARD

Petitioner seeks relief pursuant to 28 U.S.C. § 2254, which provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  The statute further provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2).

"A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in this Court's cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies such precedents to the facts in an objectively unreasonable manner." *Id.* In the context of habeas petitions, "clearly established Federal law" refers to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002). Federal courts presume the correctness of the state court's factual findings unless the petitioner overcomes them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Petitioner raises three claims for relief here:

1.  Trial Counsel rendered ineffective assistance, in violation of the Sixth Amendment, by (a) failing to call two alibi witnesses during the trial; (b) failing to move to suppress the Responding Deputy's computer screen, show-up identification; and (c) misadvising Petitioner as to the likelihood of success at trial on the armed burglary charge and his resulting sentencing exposure, thereby causing Petitioner to reject multiple favorable plea offers.

2.  The trial court violated Petitioner's Sixth Amendment right to confront witnesses, pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), by allowing certain hearsay testimony into evidence.

3.  The state court violated Petitioner's constitutional rights by deeming his newly discovered evidence to be time-barred, as the new evidence showed him to be "actually innocent."

The Court will address timeliness and exhaustion before turning to the merits.

## III.   TIMELINESS & EXHAUSTION

As to timeliness, the State concedes that Petitioner timely filed this case pursuant to 28 U.S.C. § 2244(d)(1) (DE 8 at 5-7).  The Court agrees and finds this case to be timely.

As to exhaustion, a habeas petitioner must exhaust state court remedies before filing a federal habeas petition.   28 U.S.C. § 2254(b)(1)(A).   To satisfy this requirement, a habeas petitioner must "fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review."   *Pope v. Sec'y for Dep't of Corrs.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (cleaned up).  While a petitioner need not "cite book and verse on the federal constitution," *Duncan v. Henry*, 513 U.S. 364, 365 (1995), he must "alert[ ] the [state] court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  He accomplishes this only when a "reasonable reader would understand each claim's particular legal basis and specific factual foundation."  *Kelley v. Sec'y Dep't of Corrs.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004).   Once a petitioner has "fairly presented" his federal claim to the state trial and appellate courts, he must then "present that exact same claim to the federal courts – adjacent claims or nominally similar claims do not make the cut."  *Green v. Sec'y, Dep't of Corrs.*, 28 F.4th 1089, 1158 (11th Cir. 2022) (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971)).

Here, the State concedes, and the Court agrees, that Petitioner exhausted claims (1) and (3), by raising them before the postconviction trial court and/or on appeal to the Second DCA (DE 8 at 9).  As to claim (2), however, Petitioner never raised a Sixth Amendment confrontation-clause argument before the state courts.  Instead, Petitioner raised this issue solely as a Sixth Amendment ineffective-assistance claim, by arguing that Trial Counsel rendered ineffective assistance by failing to object to the hearsay testimony at issue (DE 9-1 at 1539-40).  Accordingly, to the extent

Petitioner seeks to raise a confrontation-clause claim, the Court finds the claim to be unexhausted. The Court will instead interpret claim (2) as an ineffective-assistance claim and will address the merits on that basis.

## IV.   MERITS

### A.   Claim (1) – Ineffective Assistance of Counsel

Petitioner first argues that he received ineffective assistance of counsel in violation of his Sixth Amendment rights (DE 1 at 17). Petitioner contends that the state court decisions on this issue were contrary to, or involved an unreasonable application of, federal law, or were based on an unreasonable determination of the facts in light of the evidence presented, all within the meaning of 28 U.S.C. § 2254(d)(1-2). As set forth below, the Court disagrees.

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-part test for determining ineffective assistance of counsel. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id.* Second, a petitioner must show that this deficient performance prejudiced the defense. *Id.* To satisfy the second prong, a petitioner must show a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. Both prongs of the test must be satisfied. *Id.* at 687. Moreover, courts "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (cleaned up).

Here, Petitioner alleges he received ineffective assistance of counsel in three respects, each of which the Court will address in turn.

### 1.       Failure to Call Alibi Witnesses

First, Petitioner argues his Trial Counsel rendered ineffective assistance by failing to call two alibi witnesses to the stand, Gordon Bolles and Kevin Hamilton (DE 1 at 18).  According to Petitioner, these alibi witnesses would have confirmed that Petitioner could not possibly have committed the burglary because he was with them at the time of the offense (DE 1 at 19-20). During the state postconviction proceedings, the state court closely examined the record on this matter and reached a different conclusion.  The state court reasoned:

> [B]oth witnesses testified in their depositions that the two of them were together for most of the day, and [Petitioner] was not with them.  [Petitioner] claims the crime happened in the morning, which is when he was seen by Mr. Bolles; however, the testimony at trial was clear that the crime occurred around 2:00 PM.  *See* Transcript pgs 38, 53, 56 attached.  *Nothing in the deposition testimony of either alibi witness provides an alibi for [Petitioner].* Counsel cannot be said to be ineffective in this regard.

(DE 9-1 at 705) (emphasis added).

The Court finds that the state court's decision on this matter was not contrary to, nor did it involve an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  As noted by the state court, neither witness offered a genuine alibi.  Moreover, on close review of the record, calling these witnesses might have done more harm than good.  During deposition, Bolles testified that he saw Petitioner and his Girlfriend wearing black hoodies and riding bicycles (thereby matching the description of the two burglars) on the day of the burglary (DE 10-1 at 19, 27-29).  Likewise, Hamilton corroborated the fact that Petitioner and his Girlfriend frequently made use of a cream-colored bicycle (matching the description of the bicycle used in the burglary) (DE 10-2 at 11-12), and

Hamilton saw the bicycle that Petitioner "rode every once in a while" in Petitioner's carport on the day of the burglary (DE 10-2 at 15).

As the state court recognized, trial counsel cannot be deemed deficient, for purposes of the first prong of the *Strickland* test, for failing to call uncertain, potentially harmful, alibi witnesses. *See, e.g.*, *United States v. McCoy*, No. 98-207, 2005 WL 8159961, at * 2 (E.D. La. Apr. 15, 2005) (["T]rial counsel's failure to call certain alibi witnesses suggests a realistic appraisal of the implausibility of [petitioner's] alibi theory, rather than deficient performance."); *Calef v. Crosby*, No. 8:04-CV-895-T-17EAJ, 2006 WL 319257, at *2 (M.D. Fla. Feb. 10, 2006) ("There is no indication of ineffective assistance of counsel because the testimony of the parties reveals that the decision not to call an unsure alibi witness was clearly tactical concerning a matter within the discretion of the attorney."); *Whitehead v. Sec'y, Dep't of Corrs.*, No. 8:06-cv-35-T-17MSS, 2008 WL 423507, at *6 (M.D. Fla. Feb. 13, 2008) ("[T]rial counsel's actions were well within the range of reasonableness considering the possible consequences of using alibi witnesses.").

Moreover, even assuming Petitioner satisfied the first prong of the *Strickland* test, the Court finds he nevertheless fails under the second prong, i.e. prejudice.  Given the record evidence, Petitioner cannot show a reasonable probability exists that, but for Trial Counsel's alleged deficiencies, the jury would have acquitted him.  *See United States v. Hamblin*, 911 F.2d 551, 556 (11th Cir. 1990) (finding no prejudice to defendant when counsel failed to call alibi witnesses where the state offered additional evidence linking defendant to the crime including testimony from two eyewitnesses who identified defendant as the bank robber).  The Petition should be denied as to this claim.

11

### 2.      Failure to Move to Suppress the Show-Up Identification

Petitioner next argues his Trial Counsel rendered ineffective assistance by failing to move to suppress the Responding Deputy's computer screen show-up identification (DE 1 at 24).  In its order on this matter during postconviction proceedings, the state court cited the appropriate standard for suppression of an out-of-court identification under Florida law, noting that the test requires a court to make two determinations:   (1) whether the police used an unreasonably suggestive procedure to obtain the out-of-court identification; and (2) if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification (DE 9-1 at 703) (citing *Fitzpatrick v. State*, 900 So. 2d 495 (Fla. 2005); *Rimmer v. State*, 825 So. 2d 304, 316 (Fla. 2002)).

The state court found that Petitioner could not satisfy either part of the test, reasoning as follows:

> Here, there was no unnecessarily suggestive procedure used by law enforcement to obtain the out-of-court identification.  A single photo of [Petitioner] was shown to the eyewitness on a computer monitor in a police car while the eyewitnesses was standing outside the car.  *See* Trial Transcript pgs. 56- 57, 74-76, attached. The eyewitness stated it resembled person he saw committing the burglary, but he wasn't positive because the person he saw had a skinnier face.  *See* Transcript pgs. 50, 56-57, 76, attached.  The eyewitnesses was later shown a photo lineup and was able to positively identify [Petitioner].   *See* transcript pgs. 82-83, attached. Additionally, the eyewitness identified [Petitioner] in court as the person he saw committing the burglary.  *See* Transcript pgs. 70, 84, attached.  Assuming arguendo the police used an unnecessarily suggestive procedure to obtain the out-of-court identification, there was no irreparable misidentification.

(DE 9-1 at 704).

The state court thus concluded that Petitioner's trial counsel could not be deemed deficient, for purposes of the first prong of the *Strickland* test, for failing to file a motion to suppress that would not have been successful (DE 9-1 at 704).  As to the second prong of the *Strickland* test, the state court concluded that, "even if counsel had filed a Motion to Suppress and had been successful,

there is no reasonable probability the outcome of the proceeding would have been different" (DE 9-1 at 704).

The Court finds that the state court's decision on this matter was not contrary to, nor did it involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. The federal version of the test for suppression of an out-of-court identification mirrors the version cited by the state court, requiring the court to determine (1) whether the original identification procedure was unduly suggestive, and (2) whether, under the totality of the circumstances, the identification was nonetheless reliable. *See, e.g.*, *United States v. Felix*, 591 F. App'x 777, 780 (11th Cir. 2014). For the same reasons cited by the state court, this Court finds Petitioner would not have been able to satisfy this test and, thus, Trial Counsel cannot be deemed "deficient," for purposes of the first prong of the *Strickland* test, for failing to file a motion to suppress that would have been denied.

The Court likewise agrees with the state court's conclusion as to the second *Strickland* prong, i.e., that Petitioner cannot show prejudice. Even if Trial Counsel had filed a motion to suppress, and even if the motion had been granted, the jury heard substantial *other* evidence identifying Petitioner as the offender, including the following:

- Within a few minutes of the offense, the Eyewitness provided a description of the male suspect that matched Petitioner (DE 10-3 at 56, 88).

- The Eyewitness described the bicycles involved in the offense, which matched bicycles linked to Petitioner and his Girlfriend (DE 10-3 at 53-54, 91-92).

- Three days before the offense, Petitioner's Girlfriend had cleaned the house at issue (DE 10-3 at 89).

- Separate and apart from the show-up identification, the Eyewitness identified Petitioner from a photo line-up that included six individuals (DE 10-3 at 57-58).

- Separate and apart from the show-up identification, the Eyewitness also made an in-court identification of Petitioner (DE 10-3 at 70).

In short, Petitioner cannot show a reasonable probability exists that, but for Trial Counsel's allegedly deficient performance, the result of the trial would been different. *See Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir. 2001) ("[I]n order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show … that there is a reasonable probability that the successful motion would have affected the outcome."); *Hicks v. Director, TDCJ-CID*, No. 1:14cv493, 2017 WL 9249657, at *9 (E.D. Tx. Aug. 10, 2017) (finding that even if show-up identification had been suppressed, there was no prejudice because considerable evidence provided by the eyewitnesses matched the defendant's clothing, vehicle, and items stolen); *Taylor v. United States*, No. 05-359, 2010 WL 2553616, at *9 (E.D. Pa. June 22, 2010) ("There is no reasonable probability that the result of the trial would have been different had the motion to suppress the 'show-up' identification been raised and granted, especially given the strength of the Government's case."). The Petition should be denied as to this claim.

### 3.      Improper Advice Regarding Armed Burglary Charge

Petitioner next argues his Trial Counsel rendered ineffective assistance by advising him on an "unsound theory of defense" which, in turn, led him to reject multiple favorable plea offers from the State (DE 1 at 27). Specifically, Petitioner alleges Trial Counsel told him the State "could not possibly prove armed burglary," given that no firearm had been recovered in the case (DE 1 at 26). As a result, Petitioner did not believe he faced exposure to a conviction on that charge, which carried a mandatory minimum sentence of ten years' imprisonment under Fla. Stat. § 775.087. Petitioner argues this mistaken belief led him to reject multiple plea offers from the State, including an offer that would have resulted in a total sentence only of four years' probation (DE 1 at 26).

During postconviction proceedings, the state court conducted an evidentiary hearing on this clam, during which the court heard testimony from Petitioner, Trial Counsel, and Petitioner's

mother.  After hearing the evidence, the court made detailed findings of fact, rejecting Petitioner's

argument on multiple grounds.  To begin, the state court rejected the factual premise of Petitioner's

claim, namely, that Trial Counsel guaranteed success on the armed burglary charge, such that

Petitioner was unaware of his true sentencing exposure:

> [Petitioner] testified [Trial Counsel] told him not to worry about the armed burglary
> charge because the state would have to prove he was in actual physical possession
> of a weapon.  [Petitioner] testified counsel told him he would get the armed charge
> dismissed ....  [The Petitioner] claimed he was not told by the Assistant Public
> Defender, nor [Trial Counsel], nor any of the judges presiding over his case what
> the maximum penalty was.
>
> ...
>
> The Court finds the testimony of [Petitioner] was not credible.

(DE 9-1 at 1481-82).

In contrast to Petitioner's testimony, Trial Counsel recounted a different version of events,

which the court found credible:

> [Trial Counsel] testified he never guaranteed any outcome to [Petitioner], except
> for his best effort. …  [Trial Counsel] testified he went over the Information in this
> case with [Petitioner], and advised him of the maximum penalties he was facing,
> including the mandatory minimum of 10 years.
>
> …
>
> The Court accepts [Trial Counsel's] testimony and finds it to be credible.  [Trial
> Counsel] testified that he did, in fact, advise [Petitioner] of the maximum sentence
> he was facing if convicted at trial, including the ten year mandatory minimum.
>
> …
>
> The Court finds [Trial Counsel] advised [Petitioner] of the plea offers, advised him
> of the maximum penalties he was facing if he proceeded to trial, and did not make
> any guarantees regarding the outcome.

(DE 9-1 at 1482-83).

In its written order on this claim, the state court cited the correct standard for ineffective-assistance-of-counsel that leads to a rejected plea offer.  Specifically, the state court recognized that, to show ineffective assistance under such circumstances, a defendant must demonstrate "that (1) he or she would have accepted the [plea] offer had counsel advised that defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed" (DE 9-1 at 1483) (citing *Alcorn v. State*, 121 So. 3d 419, 422 (Fla. 2013)).

After hearing the evidence, the state court made a factual finding that Petitioner could not satisfy this test because, even if improper advice had been given, Petitioner did not reject the plea offers on that basis; instead, Petitioner rejected the plea offers due to his concerns over a simultaneously pending probation case in St. Johns County.  The state court explained as follows:

> [Trial Counsel] testified that he told [Petitioner] the best deal that he would be offered was the four years of probation.  [Trial Counsel] testified [that Petitioner's] contention throughout the plea negotiations was that he did not want probation, and would take his chances at trial.  [Petitioner] had a violation of probation pending in St. Johns County which was a concern of [Petitioner] because a conviction here would have an effect of violating his probation there.
>
> …
>
> Thus, [Petitioner] is unable to demonstrate he would have accepted the offer had [Trial Counsel] advised him correctly.  …  It is apparent one of [Petitioner's] concern was the [e]ffect a conviction in the above referenced case would have on the pending violation of probation in St. Johns County.

(DE 9-1 at 1482-83).

The state court characterized Petitioner's Rule 3.850 claim as a case of "Monday morning quarterbacking" (DE 9-1 at 1483).  The court reasoned that "if [Petitioner] accepted the probationary offer, and later violated his probation and faced a prison sentence, it is likely a

postconviction motion would have been filed then as well alleging his trial attorney forced him into taking a plea" (DE 9-1 at 1483).

The Court finds that the state court's decision on this matter was not contrary to, nor did it involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. As to the law, the federal version of the test for ineffective assistance that leads to a rejected plea offer mirrors the version cited by the state court. *See Wert v. United States*, 596 F. App'x 914, 917 (11th Cir. 2015) (recognizing that, in order to show prejudice under *Strickland's* two-part test, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; and (2) the plea would have resulted in a lesser charge or a lower sentence).

As to the facts, the state court made two factual findings that were key to resolving Petitioner's postconviction claim: (1) that Trial Counsel never guaranteed success on the armed burglary charge and properly advised Petitioner as to his true sentencing exposure (DE 9-1 at 1482), and (2) that Petitioner could not show he would have accepted the State's offer of four years' probation due to his concern over the impact on his St. Johns County case (DE 9-1 at 1483). These two factual findings hinged on the credibility of witnesses who testified before the state court.

Factual determinations such as credibility findings enjoy heightened deference on habeas review. *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). This Court must presume factual findings to be correct unless Petitioner overcomes them "with clear and convincing evidence" to the contrary. *Id.*; *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct."); *Kurtz v. Warden, Calhoun State Prison*, 541 F. App'x 927, 929 (11th Cir. 2013) ("The Antiterrorism and Effective Death Penalty Act of 1996 …

imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (cleaned up).

The Court finds that Petitioner fails to meet the high standard necessary to overcome the state court's factual determinations on these issues. Indeed, the Court has reviewed the record evidence and finds that it supports the state court's findings. Given these factual findings, Petitioner cannot meet the test for ineffective assistance of counsel based on a theory of improper advice that leads to a rejected plea offer. That is to say, Petitioner cannot show (1) that Trial Counsel misadvised him, or (2) that, but for the allegedly improper advice, he would have accepted the plea deals offered by the State. *See Martin v. United States*, 703 F. App'x 866, 872 (11th Cir. 2017) (affirming the district court's finding that "the defendant [failed to] show the outcome of the plea process would have been different with competent advice"); *see also Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (describing the standard for ineffective assistance based on rejected plea offer). As such, the Petition should be denied as to this claim.

### B.     Claim (2) – Sixth Amendment Right to Confront Witnesses

In claim (2), Petitioner argues that the trial court violated his Sixth Amendment right to confront witnesses by allowing law enforcement officers to testify as to hearsay statements gathered from third parties under the guise of facts learned through the course of the investigation (DE 1 at 35). Specifically, Petitioner points to the following testimony:

- Investigating Deputy testified that he "learned" that the owner of a black, ten-speed bicycle had loaned it to Petitioner prior to the burglary (DE 10-3 at 153-54).

- Investigating Deputy testified that the owner of a cream-colored bicycle had loaned it to Petitioner's Girlfriend prior to the burglary (DE 10-3 at 149-51).

- Investigating Deputy testified that "Lee" (the person whom Petitioner claimed to be with at the time of the burglary) was "Lee Underwood" (DE 10-3 at 158).

Petitioner argues this evidence was "testimonial" within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004). As such, the trial court should not have admitted the testimony without affording Petitioner the opportunity to cross-examine the original declarants, rather than merely the deputies who relayed this information to the jury via hearsay (DE 1 at 35-36).

As noted, Trial Counsel never objected to this testimony at trial, and Petitioner never raised confrontation-clause arguments on direct appeal or in collateral review. Accordingly, the Court finds the confrontation-clause claim to be unexhausted. Petitioner did, however, raise Sixth Amendment ineffective-assistance claims in state court based on Trial Counsel's failure to object to hearsay testimony. The Court will therefore address the merits of this claim on ineffective-assistance grounds.

During postconviction proceedings, the state court rejected Petitioner's hearsay-based ineffective-assistance claims on multiple grounds, including failure to satisfy the second prong of the *Strickland* analysis, i.e. prejudice (DE 9-1 at 704). As to the bicycles, the state court reasoned that the hearsay testimony served mainly to link Petitioner to two bicycles that matched the description of bicycles used during the burglary. The state court found no prejudice stemming from this hearsay testimony due to the presence of *other* evidence admitted at trial that served the same purpose. The court reasoned that, "due to the presence of the eyewitness testimony and other evidence submitted at trial, Defendant cannot demonstrate prejudice in this regard" (DE 9-1 at 704).

The Court finds the state court's decision on this matter was not contrary to, nor did it involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. As noted by the state court, the jury heard other evidence that linked Petitioner to the two bicycles, including the following:

- The Eyewitness testified to seeing the two burglars depart the scene on bicycles, one "light or cream colored" with a basket, and the other with a "darker frame" (DE 10-3 at 53-55).

- The Eyewitness identified Petitioner multiple times as one of the two burglars (DE 10-3 at 69).

- Resident 1 testified to seeing two bicycles on Petitioner's property (DE 10-3 at 91-92, 145-46).

- The Investigating Deputy testified that both bicycles were close-by and accessible to Petitioner and his Girlfriend (DE 10-3 at 149, 154).

Based on this evidence, the Court agrees Petitioner cannot show a reasonable probability exists that, had Trial Counsel objected to this testimony, and had the testimony been excluded, the outcome of the trial would have been different. *See, e.g.*, *McKenzie v. Sec'y, Fla. Dep't of Corrs.*, 507 F. App'x 907 (11th Cir. 2013) (holding "that even if, as prisoner contended, his trial counsel was deficient when he failed to object to state witness's hearsay testimony, prisoner failed to establish that the alleged error prejudiced him").

The Court reaches the same conclusion as to the "Lee Underwood" testimony. Petitioner told Responding Deputy he was with a friend named "Lee" at the time of the burglary (DE 10-3 at 47). Under Florida law, statements made to an investigating officer are admissible under the party-opponent hearsay exception. *Hatton v. Sec'y, Fla. Dep't of Corrs.*, No. 20-12165-E, 2021 WL 4281287, at *4 (11th Cir. Feb. 10, 2021) ("Under Florida law, relevant, out-of-court statements of a party opponent are admissible in evidence pursuant to Fla. Stat. § 90.803(18) and are thus an exception to the hearsay rule."). As such, Lee's first name was admissible.

Investigating Deputy told the jury that he "learned" during the course of the investigation that "Lee's" last name was "Underwood" (DE 10-3 at 158). Petitioner argues that Lee's last name was hearsay, that Trial Counsel rendered deficient performance under the first *Strickland* prong by

failing to object to it, and that Trial Counsel's deficient performance caused prejudice under the second *Strickland* prong.

The Court disagrees. At the outset, the Court questions whether a last name can be considered hearsay. Even assuming this point, however, the Court finds that Petitioner cannot show prejudice stemming from the admission of Lee's last name. That is to say, given the totality of evidence in the case, Petitioner cannot show a reasonable probability exists that, had Trial Counsel objected to this testimony, and had the testimony been excluded, the outcome of the trial would have been different. As such, the Petition should be denied as to this claim.

### C.      Claim (3) – Newly Discovered Evidence

In claim (3), Petitioner argues that "the state court's summary denial of Petitioner's actual innocence claim based on newly discovered evidence was contrary to clearly established Supreme Court precedent," specifically, *McQuiggin v. Perkins*, 569 U.S. 383 (2013) (DE 1 at 37). This claim should be denied for multiple reasons.

First, Petitioner never raised a claim of "actual innocence based on newly discovered evidence" before the state courts. Instead, Petitioner submitted newly discovered evidence, in the form of five witness statements, to support his already-filed Rule 3.850 motion, which itself alleged various violations of Petitioner's constitutional rights (DE 9-1 at 747-88). The state court refused to consider the new evidence on state-law grounds, finding it "untimely as well as successive" under Fla. R. Crim. P. 3.850(b)(1) (DE 9-1 at 1471-73). The state court also found that Petitioner failed to show he "could not have known of [the new evidence] by the use of reasonable diligence" within the meaning of Florida case law governing the standard for newly discovered evidence (DE 9-1 at 1471-73).

To the extent Petitioner seeks to challenge the state court's interpretation of Fla. R. Crim. P. 3.850(b)(1) or Florida caselaw, the Petition does not present a cognizable federal claim for habeas purposes.  As the Eleventh Circuit has recognized, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Next, by citing to the "actual innocence" standard, Petitioner seems to invoke *Coleman v. Thompson*, 501 U.S. 722 (1991) and its progeny, which allow federal courts, in limited circumstances, to excuse a state-law procedural default, such as application of a state-law time bar, for purposes of opening a "gateway" to allow review of an otherwise defaulted habeas claim.[1] Specifically, in *Coleman*, the Supreme Court held that:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, *or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.*

501 U.S. at 724 (emphasis added).

A "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).  This exception is exceedingly narrow in scope, as it concerns a petitioner's "actual" innocence rather than his "legal" innocence.  *Calderon v.*

---

[1] Petitioner cited *McQuiggin v. Perkins*, 569 U.S. 383 (2013) in support of his actual innocence argument, but that case does not apply here (DE 1 at 37).  *McQuiggin* involved the application of an "actual innocence" claim to overcome the time-bar for filing a federal habeas petition under 28 U.S.C. § 2244(d)(1).  *McQuiggin* did not involve a state-law time bar like the one at issue here.

*Thompson*, 523 U.S. 538, 559 (1998).  To meet the standard of actual innocence, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  As the Supreme Court has noted, given the rarity of such evidence, in virtually every case, allegations of actual innocence will be summarily rejected.  *Id.* at 324.

The actual innocence gateway does not apply here for two reasons.  First, the state court did not apply a state-law time bar to any of Petitioner's *claims*.  Instead, the state court reached the merits on all of Petitioner's postconviction claims and applied the time bar only to block consideration of Petitioner's newly discovered *evidence*, which Petitioner submitted by way of an amended Rule 3.850 motion after the state court had already reached the merits on all but one of Petitioner's claims (DE 9-1 at 1471-73).  Given that the state court did not apply a time bar to any of Petitioner's claims, such claims cannot be considered "defaulted" and thus, need not be saved by an actual innocence gateway.

Next, even if Petitioner had defaulted claims, the Court finds he fails to satisfy the stringent standard for opening the actual innocence gateway.  The Court has reviewed the newly discovered evidence at issue, which consists of the statements of five witnesses:  Kevin Hamilton, Gordon Bolles, Christina Wood, Mike Guerra, and Ed Bellinger ("Resident 2").  Based on the Court's review, Petitioner cannot show "it is more likely than not that no reasonable jury would have convicted him in light of the new evidence."  *Schlup*, 513 U.S. at 327.

Among other problems, the sworn statements of the two alibi witnesses, Hamilton and Bolles, continue to suffer the same problem identified by the state court during postconviction proceedings, namely, the witnesses established an alibi for the *morning* of January 27, 2015,

whereas the burglary took place in the *afternoon* between 1:00 and 2:00 P.M (DE 9-1 at 705).  As such, these witnesses failed to provide a convincing alibi during the time of the offense.

Two of the witnesses, Christina Wood and Mike Guerra, served mainly to attack the character of Resident 1, whose home was burglarized.  Thus, Christina Wood attested that Resident 1 "accused others of stealing her oxycodone pills" in the past (DE 9-1 at 764-65, 1384), and Mike Guerra stated that Resident 1 had a propensity to accuse people of stealing, when in fact, she often "allowed others to steal" her property or the property of her boyfriend, Resident 2, who also resided at the home (DE 9-1 at 765).  The Court finds such character impeachment unlikely to change the outcome of the trial.

Finally, Petitioner submitted a statement from Resident 2, whose firearm was allegedly stolen during the burglary at issue.  Resident 2 attested that he once owned a gun, that it was stolen, and that he never got it back (DE 9-1 at 765, 1413-14).  The Court finds this evidence, too, would be unlikely to change the outcome of the trial.  The jury already knew and understood that no firearm had been recovered during the investigation of the case (DE 10-3 at 174).

In sum, the Court finds that Petitioner's new evidence, when viewed in light of all the other evidence admitted at trial, fails to establish sufficient doubt as to Petitioner's guilt to satisfy the actual innocence standard.  Petitioner cannot show "it is more likely than not that no reasonable jury would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327.  As such, the new evidence cannot open an actual innocence gateway to allow review of Petitioner's defaulted claims (to the extent he has viable, defaulted claims).  The Petition should be denied as to this claim.

**D.      Request for Evidentiary Hearing**

Petitioner also requests this Court to conduct an evidentiary hearing on all claims for which the state court refused to hold a hearing (DE 1 at 38).  As the Eleventh Circuit has recognized, Congress has imposed "barriers limiting a habeas petitioner's right to discovery or an evidentiary hearing." *Isaacs v. Head*, 300 F.3d 1232, 1249 (11th Cir. 2002).  Specifically, under 28 U.S.C. § 2254(e)(2):

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A)      the claim relies on-
>
> (i)      a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii)      a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)      *the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.*

(emphasis added); *see also Isaacs*, 300 F.3d at 1249-50 (finding petitioner not entitled to discovery or an evidentiary hearing on his habeas petition).

For the same reasons previously discussed above in section IV.C., the Court finds that Petitioner cannot satisfy the standard for § 2254(e)(2)(B).  That is to say, Petitioner cannot show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).  Petitioner's request for an evidentiary hearing should therefore be denied.

## V.      RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Based on the foregoing, the undersigned respectfully **RECOMMENDS** as follows:

1.      The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (DE 1) should be **DENIED.**

2.      The Petitioner's request for an evidentiary hearing should be **DENIED**.

3.      The undersigned **RECOMMENDS** that no certificate of appealability be issued pursuant to 28 U.S.C. § 2253(c)(2), because Petitioner cannot show that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (setting forth the standard for a certificate of appealability).

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1; *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 17th day of July 2023.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE